We want to welcome everyone to the Fourth Circuit Court of Appeals this morning. We have interesting cases, good lawyers, and in the first case, Mr. Black versus the Securities and Exchange Commission and others, Mr. Donar. Good to have you with us, sir. You may proceed. Good morning and may it please the Court. Adi Dinar for Frank Harmon Black and Southeast Investments, NC Inc. I want to make three quick points and then I'll be happy to address anything that is on your mind. First, the four structural constitutional claims presented here do not need to be exhausted, as Carr v. Saul, Freitag, and PHH Corp. hold, and as Axon confirms. You say they don't have to be exhausted. By that, you mean you didn't have to present them below, that you can come up here and ask us to decide four constitutional questions without having them been presented to, or argued, or resolved in the underlying proceedings? Yes. That's pretty much a stretch, in my experience. Go ahead. Well, Your Honor, I'll call your attention to Carr v. Saul and Freitag, where the parties presented the structural constitutional claims for the first time in the first available federal court, and the Supreme Court had no trouble deciding the constitutional issues because they go to the validity of the ensuing and underlying non-Article III adjudication. In PHH Corp., is an en banc, unanimous, D.C. Circuit decision, in which, again, the same thing happened. The parties presented the structural constitutional claims for the first time. Well, did that case deal with a statutory exhaustion requirement? I thought it dealt with a judge-made type of exhaustion rule. Is that or not a differentiation? I don't think so, Your Honor, because the statutory exhaustion requirement here comes from Section 78Y. In PHH Corp., it was a case against the Consumer Financial Protection Bureau. There is a statute that relates to the CFPB, which looks similar to the statute at issue here, and the D.C. Circuit en banc unanimously rejected any need. Well, those cases dealt with the judge-made exhaustion requirement. Give us one that deals with the statutory exhaustion requirement. Well, these are all common law exhaustion requirements because the statutes ultimately rely on the, or borrow from the common law exhaustion requirements. So the reasonable grounds statute, which is at issue here, is very similar to the statute at issue in the CFPB case. In the Carr v. Stahl case, which is a case relating to the Social Security's administration. So there has been an unbroken line of cases from the Supreme Court and in the circuit courts that do not require exhaustion in this case. The second point I wanted to make, Your Honors, was that the Seventh Amendment and Article 3 require Article 3 courts and juries to decide suits involving private rights like this one as SEC v. Charcassie holds. And the third point I wanted to make was that, was about private non-delegation. FINRA is a private organization that black and southeast are compelled to join by federal law. But FINRA exercises governmental powers and there is no practical and no pre-deprivation SEC supervision or oversight. And that violates the private non-delegation doctrine as has been held repeatedly by the Supreme Court, by the Fifth, Sixth, and Eighth Circuits, and most recently, only a few days ago, by the D.C. Circuit. How do we even have jurisdiction at all? How is the order subject to review when part of it was remanded? How is it a final order? Well, the SEC's decision is on the merits. And that shows... It was not on the merits. They remanded it. That is a decision on the merits. They remanded it. Correct. For more work on this evidence question. Well, so there's the remand portion of the SEC's decision and there is the affirmance portion of the SEC's decision. Well, it's not a final order because it's non-final. It's final. You're arguing it's final in part and we can pick and choose. You're saying that it's a piecemeal jurisdiction situation. And we generally don't do that. We review final orders. That's the standard that we've been applying for as long as I've been around. Well, the finality... That's the position taken by FINRA. They're an innovator here. They're briefed to that point. And you haven't responded to it. Well, we responded to the... You've basically ignored it. Well, so the finality, I mean, I understand typically in the petition for review setting, finality is one of the issues. But let's imagine what the world looks like if we go back in front of FINRA. They will be deciding pure questions of law. It's back in front of FINRA. Well, correct. That's the re-litigation remand. And we would be presenting the four structural constitutional claims in front of those FINRA adjudicators. For the first time. Well, we also have the federal district court case. But what I'm trying to get at, Your Honor, is that that argument is mostly a distraction. Because as Axon confirms, the United States Supreme Court... The finality doctrine is a... What did you call it? I'm sorry. I said a distraction. A distraction. Okay. That's what I thought. You know, perhaps... And that's probably something new in the red courtroom for the finality doctrine to be called a distraction in this room. Well, I... We've been hearing cases in here for years and years. I understand, you know, that that's a heavy word. But I do think that the core of the structural constitutional claims go to the validity of the ensuing non-Article III adjudication. So structural constitutional claims have been different for many, many years. Because they aren't about this or that order that the non-Article III adjudicator enters. It's about the validity of that adjudication to begin with. So I understand the court's skepticism. The SEC's position that this order, the portion of it that deals with the order itself is final, but the remand is not final. In other words, basically there's a split in terms of how we view the finality of this order. What do you think of that position? Well, we disagree with that position because I think the relitigation remand is what necessitates... is final and that remanded is not. But so why should we treat it one way or the other? All that is either all final or is not final because of this different ruling here. Well, because that constitutes the consummation of SEC's decision-making process. So I think, you know, perhaps it would have been smart for the SEC to simply affirm on both sets of claims, both the misrepresentation claim and the inadequate supervision claim. But with the relitigation remand, the SEC has informed all of us of their views about the validity of the adjudication to begin with. And I think that's the core issue here is the nature of the claims do matter for both the exhaustion doctrine and the finality doctrine. The Seventh Amendment is a structural guarantee that requires, mandatory is the word that SEC versus jocusey uses from the Supreme Court. It is mandatory for Article III courts to decide suits involving private rights. It is mandatory. That's a pretty strong word. Again, talking of strong words... And this is the first. You're going to start in this court. Didn't you file a separate lawsuit somewhere? We have a federal district court action that is stayed by agreement of the parties at the moment. In the Western District of North Carolina. You filed a separate lawsuit about this stuff out there. And that's what we normally do. We review what the lower courts do, what the agencies do. And the district court in Western North Carolina hasn't decided any of this stuff. Well, that's one way that this court receives cases is from the federal district courts. But the other way that the court receives cases is this appellate review model. It's Section 78-1. And you review final orders. And you don't come up here with a final order. Well, a portion of the order is final. A portion is final. And we review final orders that are final. And I think both the final portion and the non-final portion gives rise to the same issue. Because we are challenging the validity of the ensuing and underlying agency adjudication. So even if this were a situation where SEC for itself found facts, held an evidentiary hearing, we would still be here on the exact same claims. So the finality is, again, I keep repeating myself, but it is a distraction. It's about our jurisdiction to hear the case at all. So I'm not sure I understand why you keep calling it a distraction. My question is, what is your best case for how we can sort of split the order and review the part of it that involves sanctions and then not review the part that was remanded? So I think, Your Honor, you need to look at Alpine Securities from the D.C. Circuit, which is the most recent pronouncement on this point. In Alpine, there was, I grant you, it was an appeal from a preliminary injunction, denial from the district court. But I think all of these cases are reaching structural constitutional issues that are presented without regard to any exhaustion or finality requirements in the non-Article III adjudication. And the other set of cases, Your Honor, I would mention are the private non-delegation cases that have been decided by the Fifth, Sixth, and Eighth Circuits that are up on pending cert petitions in the U.S. Supreme Court. They all point, again, in the same direction. Axon Enterprise v. FTC, which is a combined case with SEC v. Cochran that the U.S. Supreme Court decided in 2023, again, the same thing. The nature of the claims do matter. If a claim is wholly collateral, as it is here, then simply the court looks at whether the claim is wholly collateral if there is any agency expertise. Because if we go back in front of FINRA or SEC, what are they going to say? They are going to decide questions of law. And looking at cases like Loeb v. Breit, deciding questions of law is quintessentially a judicial function. And that is essentially what we're asking the court to do, is to decide the questions of law that go to the validity of the ensuing and underlying agency and private adjudication. I quickly wanted to touch on the Seventh Amendment argument because I think that's important in the time that I have left. The Seventh Amendment, as charges— Is there a claim here for more than $20? Is that what you're claiming? I'm sorry, Your Honor? Is there a claim here for more than $20? It was a quarter-million fine that FINRA imposed initially, and the SEC affirmed $73,500, so it's way beyond $20. Is that part of the remand? No, it's on the affirmance portion. They levied a $73,500 fine. And that's the dispositive factor, according to Jarkissi, is the monetary portion. It's all but dispositive, as SEC v. Jarkissi says. And then the cause of action is merely confirmatory. It merely confirms that this is in fact a suit at common law that requires a jury trial. And if you look at the causes of action, the affirmance portion, which is the inadequate supervision, because an employee lost 16 emails that were to his wife, they were not business-related emails, but the inadequate supervision cause of action comes from the law of master-servant, the law of principal agent, and the respondeat superior doctrine. And the misrepresentation regarding office inspections, that's the remanded portion of the decision. That, again, is a fraud, perjury, forgery-based cause of action which comes from the common law. So the causes of action merely confirm that the monetary damages suit against Mr. Black and Southeast is a suit at common law that requires a jury trial in Article III courts. Do you concede or agree that FINRA is a private entity? It is a private entity that exercises significant governmental powers, and that comes from Sections 78S, Subsection G1, and 78O-3, Subsections B7 and B8. FINRA does exercise significant government power. They investigate, they make the prosecutorial decision, they adjudicate cases, and then they levy fines, all without any meaningful SEC supervision. As Alpine Securities... Have we ever applied constitutional structures, requirements to an entity that was not governmental? Well, yes, if you're talking about the private non-delegation doctrine. Tell me a case we've done that. Carter Coe and the HISA cases, the horse racing cases, are all cases dealing with private entities exercising significant governmental power, and those are private non-delegation cases. And the courts there have said that there is no non-delegation violation because the rules issued by these private organizations are reviewed and approved and only then go into effect. But here, that is not the situation. FINRA's decision against Black and Southeast goes into effect immediately, even before you can obtain an interlocutory expedited stay from the SEC. Mr. Black remained expelled from the financial sector for four and a half years that SEC took to decide the merits portion of this decision. They denied the stay application. So this is definitely... So your action is an action against the private entity directly. And the cases you point out deal with private non-delegation type claims. In other words, the agency... The question was whether the agency delegated too much power. Isn't that a differentiation? So those cases are against both the private agency and... Excuse me, the private organization and the relevant federal agency. So the Federal Trade Commission is involved in those cases, for example. So the private non-delegation claims are typically against both the federal agency and... Because the federal agency is doing the delegating, as well as Congress is doing the delegating by promulgating statutes. But it's still... I'm confused, at least in terms of whether you can bring a claim directly against this private entity in the absence of the agency aspect of it. Well, there is no... I mean, the SEC is here. So the agency is definitely involved in all of these cases. They get to present their well-considered opinions to the court. And then the court, under Loper-Bright, decides for itself what the statutory scheme means and whether that violates the constitutional structure. I just want to make it the same. It seems like in those cases, the question was whether the agency had delegated the power to this private entity. That's not the question here. Well, so in those cases, there is a statute, the Horse Racing and Integrity Safety Act, which in part delegates the government's powers to the private organization, the rulemaking power to the private organizations. So in the private non-delegation cases that I cited, it involves both a congressional delegation of power and, under that same statutory scheme, a delegation of power from the agency to the private organization. And the same situation is present here. I see that my time is expiring. If there are no further questions, I would like to come back on rebuttal. Thank you. Thank you, sir. Ms. Dixon? Good morning, Your Honors, and may it please the Court, Courtney Dixon for the Securities and Exchange Commission. The only issue that is properly before this Court on direct review from the Commission's order is the Commission's conclusion that the petitioners committed the disciplinary violations for supervisory and record-keeping violations. Petitioners raise additional arguments about FINRA's disciplinary actions for allegedly lying to FINRA. That was remanded. There is no final decision before this Court. Petitioners also raise a host of constitutional issues, but as Your Honors' questions have noted this morning, they did not exhaust those issues before the agency. The statute requires that issues be exhausted before the Commission. The statutory bar has been universally recognized by courts to... Why should we take this in a piecemeal fashion? There could be... What limits this from having several parts of it? Some of it could be final, some not final. Why would we do that? So on the finality issue, Your Honor, I mean, the Commission had before it, again, certain disciplinary counts by FINRA. The Commission determined that the petitioners committed the disciplinary violations for the supervisory and record-keeping counts, and it concluded that they had violated FINRA rules and it affirmed FINRA's sanction for that. That's the Commission's final decision on that, and unless this Court reverses, the Commission is not going to reconsider that. The other issues are not before this Court. They've been remanded to FINRA. There will be further proceedings, or FINRA could decide not to pursue those claims at all. That's a canonical example of a non-final order. But then what is your best authority for us reviewing a case like that in piecemeal fashion in the way that Judge Wynn described? Sure. The Saliba case, Saliba v. SEC from the Ninth Circuit, similar posture as here. There were kind of multiple disciplinary counts before the Commission. The Commission kind of addressed one of them in a final order, and it sent the others back, and the Court said because the Commission's order is final in part with respect to the sanction, we can review that part of the Commission's order, and then it remanded the others. I'll also just emphasize, I mean, the breadth of the Petitioner's arguments. They do not cite any case that supports their conclusion that this Court can exercise review over all aspects of the order simply because there was a remand. And on Petitioner's telling, if the Commission had set aside all of FINRA's sanctions, remanded for further proceedings, and said go back to FINRA and do this all over again, Petitioner's theory would mean that they think that they could be in this Court on unexhausted constitutional claims. That's not how this direct review statute has ever been understood. On the constitutional claims, again, the statutory exhaustion requirement has been universally understood to include constitutional claims. Courts have rejected the arguments that Petitioners present here, that structural constitutional claims kind of categorically qualify as a reasonable ground. I'll also emphasize that in their opening brief in this Court, Petitioners did not raise any reasonable grounds that might excuse their forfeiture. They waited until their reply brief even to make those arguments. So those constitutional claims are not before this Court. You're saying that they didn't raise this exhaustion or structural claim until the reply brief? They didn't. So they argue that they had a reasonable ground to excuse their forfeiture. It's their burden to show that. In their opening brief, they may raise no such argument. So I think even in this Court, trying to say that they can be in this Court, they waited until their... Yes, Your Honor. That's the point there? Yes, Your Honor. That's the point that I am making. And I don't... Go ahead. I'm sorry. You go ahead. No, you go ahead. How the... Why is it that the SEC and FINRA take different positions on this jurisdictional position? Your Honor, FINRA is a private entity. It's privately represented. But the... We've got all kinds of authority up here. We review final orders. There would be exceptions or junctions sometimes and collateral order doctrine. I certainly agree with the principle that Your Honor is stating that this Court reviews... We don't do things in a piecemeal fashion. I think in this... We hear the firm part and remanded part. Again, Your Honor, I would point the Court... It's not over. I would point the Court to the Saliba case. But they didn't raise any of this stuff about the Constitution but what they did was that it's not over. So I think with respect to, again, the Commission's conclusion that with the disciplinary sanctions for the record-keeping violations and the fact that they didn't have correct supervisory procedures, I mean, the Commission issued a decision on that saying, yes, they committed this misconduct in affirming FINRA's sanction. But we're a court of review, not a first view. That's a settled principle up here. Yes, Your Honor, and this Court would review the Commission's conclusion that petitioners committed those disciplinary sanctions. If Your Honor is referring to the constitutional claims, I certainly agree that this Court is a court of review and not a first review, and they did not raise those arguments to the Commission. I'll note petitioners invoke repeatedly axon. That has nothing to do with the posture that we are in here. That case addresses whether certain structural constitutional claims with respect to ongoing administrative proceedings can be brought in district court in the first instance. Well, you refer to the Saliba case, which supports your position, the Ninth Circuit case. Fair enough. Judge King is going to the question, ultimately, what would be not just wrong, but why couldn't we just wait and decide it all at one time? Right, so I think the Saliba – And what is the reason we would not do that? I think the Saliba case speaks to this, Your Honor. The Court notes, look, the Commission had, again, multiple claims before it. It made a conclusion about these disciplinary violations, and the case is going back to FINRA. FINRA could decide not to pursue anything about the other disciplinary charges. That's why that portion is non-final. But if that happens, it's also possible that the other claims, which the Commission has reviewed, they could not be before this Court perhaps a second time if the Commission were not to pursue the other claims on remand. The intervener distinguishes Saliba by noting that that decision was made without sort of adversarial briefing and with the support of both parties in terms of jurisdiction, and also that in that case, there was an immediately effective bar from FINRA membership, which the Court analogized to an injunction. But that's not the case here, is it? Doesn't that distinction make a difference? The Court stated that part about the injunction, Your Honor, in a footnote to say it further supported its conclusion. And again, in the Commission's view, this is the Commission's final word with respect to the disciplinary sanctions. We think, of course, only the merits of that are before the Court. There was substantial evidence supporting the Commission's conclusion. The Commission's conclusion was reasonable. Petitioners do not present any arguments to second-guess the Commission's conclusion in that respect. What would the problem be for the SEC if we just waited and heard the whole thing together instead of just heard the one part now? My only response to that, Your Honor, and I'm not saying that it's necessarily going to happen or it's necessarily likely, but if, for example, this Court sends everything back to FINRA and FINRA says, you know, we don't actually want to pursue the other disciplinary claims against Petitioner for allegedly lying to FINRA, it's possible that there wouldn't be then another Commission order before this Court to directly review because, again, the Commission has made its final determination on this. It's not going to reconsider it unless the Court reverses. And I think that's maybe the crux of the distinction between us and FINRA, but we certainly agree that a remand order is the canonical example of something that's non-final. This Court doesn't have jurisdiction over the portions that are remanding to FINRA, and the statutory exhaustion bar precludes Petitioner's constitutional claims in this Court. This reminds me, the portion that's remanded, has that been stayed? Would it be hearing there pending the outcome of this case? Because it seems to be... You seem to be saying there's some intersection of how we might rule that could influence the remand, or is there some way? I mean, the Commission set aside the penalties that FINRA had imposed for allegedly lying to FINRA that would go back before FINRA. My point, Your Honor, was that... Has that been stayed? In other words, could it... Is FINRA already deciding that, or could it decide before we issue an opinion in this case? I mean, I don't think it would go back to FINRA on remand, Your Honor, until this Court reaches a decision. I understand you don't think it, but is there anything that prohibits that from happening, that FINRA could actually rule on that before we issue an opinion? I mean, I'm not sure if I have off the top of my head anything from this statute, but I think this Court is reviewing the Commission's conclusion. The Commission had remanded to FINRA. But the Commission made a remand order to FINRA, and that's presumably ongoing. FINRA's doing work on the case. No, Your Honor, that's not my understanding. Well, is that the record? Is that in this record? It was remanded to FINRA to do work. In the order that's before this Court on review, yes. And so that's why it's not a final order, as I understand it. But you're equivocating on that. I'm not equivocating on that the remand order is not a final order, Your Honor. We are not equivocating on that. We certainly agree with FINRA in that respect. Then it's in the hands of FINRA to do what they were supposed to do. I mean, the Commission.  It has to do with, I thought, sort of like Brady claims or that kind of stuff. Spoilation of evidence. They're supposed to reconsider that. Yes, all of that. Do some more work on it. All of that will be back before FINRA, and FINRA could decide not to pursue the charges at all, yes. And if they do it, I assume they can come back to the SEC, and maybe you can come up with a final order. At this point, you don't have it final. I certainly agree with respect to the portions of the Commission order that were mandated, yes. And, again, we think the statutory bar is preclusive of petitioner's constitutional claims. Unless there's any further questions, I'll let my friend from FINRA. Let's see what FINRA has to say about this. Thank you very much. Mr. White. Good morning, Your Honors. No, I'm sorry. I'm in the wrong case. Mr. Tarani. Correct. Thank you, Your Honor. I'm sorry. May I please the Court? Yes, sir. Good to have you with us, sir. Amir Tarani for FINRA. Petitioner's constitutional challenge to FINRA is both procedurally and substantively flawed. Petitioners are prematurely seeking judicial review in the absence of final agency action and without exhausting their administrative remedies, and they are advancing constitutional arguments that are foreclosed by the precedent of both the Supreme Court and this Court. On the question of finality, there is not a final order here within the meaning of Section 78yA1. And I would point this Court to its decision in Newport News Shipbuilding v. Director, which involved a limited remand analogous in every material way to the remand that the SEC issued here. In Newport News Shipbuilding, the Department of Labor Board of Benefits Review had determined that the employer was liable to the employee for benefits. It had calculated the amount of temporary disability benefits, but it had remanded to an ALJ for a determination of the amount of permanent disability benefits. The employer petitioned for review to this Court, and this Court held that the order was not final because there was more work to be done by the agency. Even though the agency had definitively determined that the employer was liable for benefits and had calculated the amount of temporary disability benefits, the fact that there was more work to be done with respect to the amount of permanent disability benefits foreclosed the availability of judicial review. You do have to read a lot into Newport News Shipbuilding case. Not a whole lot of reasoning in that case, the current case. So much of what you're articulating about it is I guess we have to sort of pull it out of it. What we think the Court was saying there, right? Well, the facts of the case are clear from the opinion, Your Honor, the procedural. To grant you that, there's not a lot of reasoning in that case. It's just a procurement case. It's straightforward right to the end. Not a whole lot of filling in the blanks. Well, I think it's a straightforward issue, Your Honor, that doesn't require a lot of reasoning. The Longshoremen and Harbor Workers Compensation Act, like the Exchange Act here, required a final order, and there was not a final order there because there was more work to be done by the agency. There is more work to be done by FINRA here. So what would be the problem, if any, for FINRA if we do consider that sanctions part of the order? It's inefficient, Your Honor, for this Court to proceed with this type of piecemeal review. This Court asked about the Saliba case in the Ninth Circuit, and for the reasons that you identified, Judge Thacker, that case is distinguishable because there was an immediately effective bar on the petitioner in that case. The petitioner who was before the Ninth Circuit was subject to an order with immediate legal consequences and effect. That is not the case with respect to Mr. Black and Southeast Investment because they have no obligation to pay the fine imposed by FINRA and affirmed by the SEC until the termination of all proceedings in this matter. So that fine is not due. So what does this mean? If we agree with you, then we just wait until you decide whether or not you're going to have some more sanctions? Yes, Your Honor. You wait just as you do in the ordinary course. Why don't you just sit on the case for a while? What do we do with that? Well, the petitioners here have filed a separate district court case raising these same constitutional challenges to FINRA. They are free to attempt to move forward with that case in the district court to the extent that they have. Are those constitutional issues identical to what they're raising here? Yes, Your Honor. The very same constitutional issues they're presenting here, they have presented to the district court in a complaint. And the status of that is that it's been stayed pending these appeals. So it's upside down. Normally, the district courts rule first and then we review. Right? That's the principle of an alleged appeal court. But here, they got it upside down. And they got us reviewing first with the district court proceedings having been stayed. Are you in those cases, too? Yes, Your Honor. That's out there. That's pending, stayed, but it's pending in the western district of North Carolina. That's exactly right. So to the extent that the petitioners are seeking a venue in which to press these constitutional arguments, it would be in the district court where they are raising the same appointments clause, the same non-delegation. What are they asking the district court to do? Say those are unconstitutional and they would plead that here? Or plead that in the administrative proceeding? Or do you know how they plan to handle that? The petitioners are asking the district court to enjoin the… Declaratory and injunctive relief. Exactly right, Your Honor. But it's been stayed. It has been stayed pending this court's decision because the same issues appear. Your position here is that we don't have any jurisdiction for anything. That's correct, Your Honor. Is that correct? That's the federal position. And now, what's the distinction between the federal position and the SEC position? The SEC believes, based on the Saliba case, that there is jurisdiction. That's the non-circuit case. Correct. You say that's an outlier or just distinguishable? I don't think it's an outlier. You don't think it's an outlier. All right. That's what I'm getting at. You can give them that much credit. It's not an outlier. It's just distinguishable. It's distinguishable because the petitioners there were subject to the immediate legal consequences of the SEC order, which barred the petitioner from associating with FINRA members. Here, there are no ongoing immediate consequences of the SEC's decision because the petitioners are not obligated to pay the fine that the SEC upheld. Unless we hear that. So if we hear that part of the order and affirm the order below, then they'd have to pay the sanctions now? No, Your Honor. They still would have to wait until everything is final. Correct. Which is why we should perhaps wait until everything is final. That's our position, Your Honor. It's FINRA's published policy that respondents in disciplinary proceedings are not required to pay fines until all review by the SEC and by a court is complete. And that would include further review. And that's the critical distinction between this case and Saliba because in Saliba, that was an immediate bar for membership. Exactly. There were immediate legal consequences for the petitioner in that case. The petitioners here have also failed to exhaust their administrative remedies, as has been discussed already this morning. There is no categorical exception to statutory exhaustion for constitutional arguments. This court made that clear in Ed Potter Cole v. Director, where the court refused to consider an appointments clause challenge to a Department of Labor. Let me ask you, you pretty much understood you are a private entity, but you can impose a lifetime ban on investors. Why is that not something of a governmental function? Because FINRA is a private entity functioning subordinately to the SEC. As this court said in Jones v. SEC in discussing FINRA's predecessor, the NASD, the SEC exercises pervasive oversight authority and has a veto power over NASD and FINRA disciplinary proceedings. Here, the SEC undertook de novo independent review, and that review worked from the petitioner's perspective. The SEC didn't simply rubber stamp what FINRA did. The SEC affirmed in part and it remanded in part. There is a powerful arsenal of tools that the SEC can bring to bear with respect to FINRA disciplinary proceedings to the extent that FINRA deviates from its statutory obligations, including revoking FINRA's registration as a national securities association or removing FINRA board members and officers, all of which are hallmarks of the fact that FINRA functions subordinately to the government. These cases don't move very fast, do they? When you look at the time frame here, the SEC took four and a half years to do something here. FINRA takes a period of time. I'm trying to figure that out in terms of, I guess we call it judicial economy and getting things and getting to the bottom of it. But what role do we play in moving these cases along? Because this may be four and a half years before you might be before this court again or something is resolved here. Judge King, I see my time has expired. May I answer a question? As long as you get questions, you answer them. Thank you. Thank you, Your Honor. I think that's why the ongoing district court proceedings are important here, Your Honor. The petitioners, to the extent that they are concerned about the length of the FINRA proceedings or the length of the SEC's review, have the opportunity to press these constitutional arguments in the district court. And if there is any merit to those arguments, and we would submit that there is not, but if there is, then they have the opportunity to seek near-term relief from the district court. Thank you. Thank you, Your Honor. Thank you very much. Mr. Dhanar. Thank you, Your Honor. Two quick points. First, regarding exhaustion and finality. Axon would not have been decided the way it was if the court had given any credence to this exhaustion and finality arguments. The crux of Axon is that there is a here and now injury of being subjected to a non-Article III adjudication process where the challenge is to the constitutionality of that non-Article III adjudication process. That is exactly the situation here. Axon is merely confirmatory of the fact that there is simply no credence to be paid to these exhaustion and finality arguments that SEC and FINRA are making. And a wider point in relation to that comes from Loper Bright. In a case called PDK Laboratories in the D.C. Circuit, then-Judge John Roberts wrote that you can't make litigation a ping-pong game. Then-Judge Roberts' words, not mine. And that's exactly what SEC and FINRA are asking us to do, to ping-pong us back to FINRA, up through SEC, maybe back to this court, only to be told that we needed to exhaust or, you know, the SEC order is not final. That is not how litigation functions. I was just thinking about you citing that case there. How does that help you? It makes it very clear that when you as a litigant choose to use a statutory review mechanism, you're subject to exhaustion. Well, so AXON stands for the proposition that the first available court gets to decide structural constitutional claims. And this is the first available court under the statutory scheme. AXON says when litigants choose to use a statutory review mechanism such as 15 U.S. etc., they must still meet its strictures, including exhaustion requirements. That's the question I'm asking you. How does that help you? I'm saying AXON is confirmatory because my principal argument rests on Carr v. Saul, in which the Social Security claimant went through the administrative process, and the first available court under the statutory scheme at issue with the Social Security Administration was the Federal District Court. And the Social Security claimant raised the structural constitutional issue for the first time in front of the first available court, which was the District Court. This is the first available court in the statutory scheme at issue here. You were so confident in that, why did you bring out lawsuits out there in Western North Carolina? Well, Your Honor, that lawsuit has stayed pending this court's decision. But you initiated it. Correct. Yeah. And we would press the exact same arguments there. Talking about this ping-pong litigation, this piecemeal litigation, that piecemeal litigation helps nobody. I see my time has expired, may I finish? That piecemeal litigation does not help anybody because it wastes everybody's resources. We have to go back and re-argue this whole thing in front of an unconstitutionally structured litigation process. For those reasons— I just want to make it clear on the point. The language that I brought up, I was looking at it here, and it's actually a D.C. Circuit case, but it's talking about the Exxon case in terms of requirement. But the Carr case is still—I brought it up earlier. It is a judge-made exhaustion rule, not a statutory one. Isn't that a distinction? That is not a distinction because Carr dealt with the statutory scheme at issue there. The other cases that we rely on, FriTag, is the same thing. The argument was raised for the first time in the Fifth Circuit. The Fifth Circuit decided the structural constitutional claim because there it was a statutory scheme that gave you the— the only option was to go to the Circuit Courts of Appeals. So we make the argument under Carr, FriTag, and PHS Corp under the D.C. Circuit. We ask that you vacate the SEC's decision in its entirety. Thank you. Thank you very much. We appreciate it. We'll come down and greet counsel, and then I'm going to exercise my discretion and call for a brief. Right.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker